UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-cr-60285-RSR

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

TERRANCE BROWN,

     Defendant.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF ADMISSION OF STATEMENT

Terrence Brown, by and through undersigned counsel, hereby files this memorandum of law in support of his efforts to admit the statement and testimony of Elliott Maurice Davis, and states:

### FACTS

The government's theory of prosecution is that Mr. Brown and his alleged co-conspirators attempted to rob various armored car messengers on different occasions, culminating in the murder of Alejandro Nodarse Arencibia, a Brink's armored truck messenger on October 1, 2010. The government contends that Mr. Brown was the mastermind of the robbery.

In December of 2010, a CHS overheard a conversation in which Elliott Maurice Davis was speaking with Jermaine Parrish about the October 1, 2010 robbery. The CHS reported the conversation to FBI agent Perez on March 17, 2011. On June 5, 2013, S/A Perez testified under oath and reaffirmed the accuracy of his documentation of the CHS's statement. By request of the Court and prosecution, S/A Perez's report is not being filed in the public record, although it

has been marked and offered as an exhibit into the record as "Def. CHS."

In relevant part, the CHS reported the following:

- In December of 2010 the CHS was with Jermaine Parrish and Elliott Maurice Davis and that he listed to those two discuss the Brinks robbery which had occurred a few months earlier;

- Davis said that Parrish had been the get-away driver during the robbery and that Parrish had mistakenly left the stolen money in the back seat of the get-away car;

- Davis indicated that he had planned the robbery and was upset that Parrish lost the money;

- Parish admitted that he left the money behind and stated he "should have been straight now," which the CHS understood to mean that he should have had money in his possession now;

- Davis indicated that he hoped "Nate holds it down," meaning that he hoped Nathaniel Moss would not identify his coconspirators in the robbery.

(Def. CHS at p.1.)  On June 5, 2013, Elliott Davis testified before the Court out of the presence of the jury that he did not make those statements.  In response to cross-examination, Mr. Davis invoked his Fifth Amendment right to remain silent and the government sought to immunize him.  On June 5, 2013, the Court granted the government's motion, although the CHS has not continued his testimony as of the filing of this memorandum.

The government had been instructed make the CHS available to the Court on June 5, 2013, should the Court wish to question the CHS *in camera*.  After Mr. Davis's testimony, when the Court sought to question the CHS, the government informed the Court that despite the fact that the CHS had initially being available to the government, the CHS was no longer available to the government or Court.  On June 5, 2013, the Court granted Mr. Brown's motion to issue a material witness warrant for the CHS.  Because the CHS's information has not been disclosed, the warrant is being issued under seal; Mr. Brown presumes it is in the process of being served.

The government has objected to the admission of the statement by Mr. Davis and argues

SINCLAIR, LOUIS, HEATH, NUSSBAUM & ZAVERTNIK, P.A.

that the defense cannot call Mr. Davis so as only to impeach him.

## ARGUMENT AND LAW

The government has cited a number of cases that ostensibly stand for the proposition that a party may not call a witness for the sole purpose of impeachment.  Many of those cases appear to have been decided either under State law, or predate the enactment of Federal Rule of Evidence Rule 607, which allows for any party, including the party calling a witness, to impeach that witness.  "The traditional rule against impeaching one's own witness is abandoned as based on false premises.  A party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them.  Denial of the right leaves the party at the mercy of the witness and the adversary." Fed. R. Evid. 607, Advisory Committee Notes (emphasis added).

Despite the fact that the Rules of Evidence abolished the common law rule that appears to have been the foundation for several of the cases relied upon by the government, the government has nevertheless cited to cases that post-date the enactment of the Federal Rules of Evidence, for a similar proposition.  United States v. Gossett, 877 F.2d 901 (11th Cir. 1989) embodies those cases.  In Gossett, the Eleventh Circuit held that the trial court properly excluded the testimony of an individual who heard a co-defendant admit to being the person who shot a particular victim.  In doing so, the court recognized the general principle applicable to post-Rule 607 cases: that a party may not use Rule 607 solely to put before the jury testimony that it could not otherwise admit.  Here the government's objections fail, because the testimony concerning the statement is admissible under different theories.

### The statement is admissible under Rule 807

The government could not seriously oppose the admission of the statement under Federal Rule of Evidence 804(b)(3) (statement against interest); this is clear from the fact that it took the

---

SINCLAIR, LOUIS, HEATH, NUSSBAUM & ZAVERTNIK, P.A.

extraordinary measure to immunize Mr. Davis and ask the Court to compel his testimony.  The only reason for granting Mr. Davis immunity was to make him "available" and remove the statement attributed to him from Rule 804(b)(3), which requires unavailability.  The government never would have immunized Mr. Davis if it did not believe that a fair assessment of the statement attributed to him met the criteria of Federal Rule of Evidence 804(b)(3), that the statement was against his interest (subsection A) and that the statement is "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B).

The government's efforts to make Mr. Davis "available" so that the statement cannot be admitted under Rule 804 do nothing to prevent the statement from being admitted under Federal Rule of Evidence 807.  See e.g. Whitehurst v. Wright, 592 F.2d 834, 840, n.7 (5th Cir. 1979) (a party cannot use Rule 607 solely as a means to introduce otherwise inadmissible evidence, but noting that "because the statement was offered only for impeachment purposes, we make no determination as to its admissibility under Fed. R. Evid. s 803(24).")[1]  To be admissible under

---

[1] 803(24) is now embodied in Rule 807. Rule 807 was formed out of two rules – Rule 803(24), the residual exception to the hearsay rule that applied regardless whether a witness was available or not, and Rule 804(b)(5), the residual exception to the hearsay rule that applied when a witness was unavailable. See Fed. R. Evid. 804, 1997 Advisory Committee Notes to subsection (b)(5) ("The contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807. This was done to facilitate additions to Rules 803 and 804. No change in meaning is intended."); Fed. R. Evid. 803, 1997 Advisory Committee Notes, (same).  Both former rules read the same:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 804(b)(5) (1996); Fed. R. Evid. 803(24) (1996).

SINCLAIR, LOUIS, HEATH, NUSSBAUM & ZAVERTNIK, P.A.

Rule 807, a statement must meet the following criteria: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807(a).

Factors 2 through 4 are the easiest to deal with: (2) Mr. Davis's statement directly implicates himself as the mastermind of the October 1, 2010 robbery. The government contends that Mr. Brown is the mastermind of the robbery. It is undeniable that the statement addresses a material fact; (3) Mr. Brown cannot obtain any such evidence through reasonable efforts – the government had a team of federal and local investigators working the October 1, 2010 robbery for a year before indicting Mr. Brown. In the process of the investigation the government has been able to compensate witnesses, make promises in exchange for testimony and otherwise bring the full weight of the federal government upon witnesses to encourage their cooperation – Mr. Brown has no such tools; (4) the purpose of the rules of evidence and the interests of justice will be best served by admission of the statement. See e.g. United States v. Williams, 573 F.2d 284, 288 (5th Cir. 1978) ("In applying Rule 803(24) to this case we must note that the 'rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.' Federal Rules of Evidence, Rule 102. Rule 803(24) has been accepted as the basis for introducing extrajudicial statements.").

As noted above, the government sought to immunize Davis to ensure the statement could not be offered under Rule 804(b)(3). The accurate recognition by the government that Davis's statement would qualify for admission under 804(b)(3) is material because it puts to rest any

SINCLAIR, LOUIS, HEATH, NUSSBAUM & ZAVERTNIK, P.A.

discussion that the statement could be construed in such a way as not to have been against

Davis's interest. Because the statement was against Mr. Davis's interests and in light of the

surrounding circumstances, the statement possessed "equivalent circumstantial guarantees of

trustworthiness" such that it should be admitted. Fed.R.Evid. 807. United States v. Fernandez,

892 F.2d 976 (11th Cir. 1989), is useful because of its comparison between "trustworthiness" as

embodied in former Rule 804(b)(5) and statements against interest as embodied in Rule

804(b)(3):

> The rule thus requires that statements admitted under its authority have "circumstantial guarantees of trustworthiness" equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history. These categories of information have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information if the declarant is unavailable to testify.
>
> …
>
> …we consider statements against interest reliable because persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true.

Fernandez, 892 F.2d at 980 (emphasis added) (citations omitted). In Fernandez, the government

sought to admit the grand jury testimony of a witness who had died against the defendant under

the residual exception contained within Rule 804. The court explained that "[i]f the proponent

can show that a particular piece of hearsay carries 'circumstantial guarantees of trustworthiness'

equivalent to one of the four codified exceptions, that statement should be admissible regardless

of its affinity to a statement falling squarely within a codified exception." Id. 892 F.2d at 982.

The opinion also recognized that the residual exception was in place to avoid the mechanical

classification of statements that would either fit squarely within an exception or not be

admissible. "We consider admissible those statements that are similar though not identical to

hearsay clearly falling under one of the four codified exceptions [within Rule 804], if the statements otherwise bear indicia of trustworthiness equivalent to those exceptions.  The contrary reading would create an arbitrary distinction between hearsay statements that narrowly, but conclusively, fail to satisfy one of the formal exceptions, and those hearsay statements which do not even arguably fit into a recognized mold." Id.; see also Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (dealing with alleged confession to crime by third party (not the defendant on trial) and noting that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.")

The only difference between admission of Davis's statement under Rule 804(b)(3), and not admitting the statement under that provision, is the fact that the government rendered Davis available within the meaning of 804.  Because the circumstances surrounding Davis's statement are equivalent to those requiring admission under 804(b)(3), the statement is admissible under Rule 807. See United States v. Workman, 860 F.2d 140, 144 (4th Cir. 1988) (affirming admission of statement and noting that "it was not necessary to determine if the circumstantial guarantees of trustworthiness are equivalent to those safeguards which arise from direct and cross-examination, and that the requirement of equivalent guarantees of trustworthiness was met 'if there is equivalency of any one of the preceding 804(b) exceptions.' The statement of Davis to FBI Agent Turner qualifies as a statement against interest under Rule 804(b)(3).") (internal citations omitted).

In addition to being on par with the exception delineated in Rule 804(b)(3), the statement also bears circumstantial guarantees of trustworthiness.  In assessing this factor the courts have instructed that the approach be conducted on a case by case basis. United States v. Pena, 527 F.2d 1356 (5th Cir. 1976).  "When and to whom the statement is made is important, as is the

presence or absence of corroborating evidence. Further, if the declarant is available to testify, there is less likelihood that the jury will attach undue weight to the evidence. Finally, whether the confession is 'in a very real sense self-incriminatory and unquestionably against interest' is a significant indicator of reliability." Id., 527 F.2d at 1362. Here, there is ample corroborating evidence. Davis was speaking with Parish, a person who the government claims was the getaway driver during the October 1, 2010 robbery. Davis correctly (according to the government) identified Parrish's role in the robbery. That Parrish would be willing to discuss the details of a robbery/murder that he was the getaway driver in, with a person uninvolved is extremely unlikely. Further, when Davis indicated he was upset with Parrish for leaving the money, Parrish affirmed the accusation by saying that they should be "straight" now. Davis is available to testify and is free to either admit or deny making the statement, the jury can assess that testimony and determine what weight to give to the statement. Finally, Davis's statement is self-incriminatory and unquestionably against his interest. Were Davis on trial, there can be zero doubt that the government would be offering the statement against Davis and arguing to a jury that Davis confessed.

### The statement is admissible as non-hearsay

In addition to be admissible as substantive evidence, the fact that the CHS reported Davis's statement to the government and the government did nothing to investigate Davis's role in the robbery is admissible to establish the government conducted a narrow-sighted investigation, which lacked objectivity.

SINCLAIR, LOUIS, HEATH, NUSSBAUM & ZAVERTNIK, P.A.

WHEREFORE, Terrence Brown respectfully requests this Honorable Court permit the admission of Elliott Maurice Davis's confession to the CHS to being the mastermind of the October 1, 2010 robbery.

Respectfully Submitted,

s/ Marshall Dore Louis

Marshall Dore Louis
Florida Bar No. 512680
SINCLAIR, LOUIS, HEATH,
NUSSBAUM & ZAVERTNIK, P.A.
Alfred I. duPont Building
169 East Flagler Street, Suite 1125
Miami, FL 33131
TEL: (305) 374-0544
FAX: (305) 381-6869
E-MAIL: mdl@sinclairlouis.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 9, 2013 I filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Se rvice List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Marshall Dore Louis

Marshall Dore Louis
Florida Bar No. 512680
SINCLAIR, LOUIS, HEATH,
NUSSBAUM & ZAVERTNIK, P.A.
Alfred I. duPont Building
169 East Flagler Street, Suite 1125
Miami, FL 33131
TEL: (305) 374-0544
FAX: (305) 381-6869
E-MAIL: mdl@sinclairlouis.com

## SERVICE LIST

**Michael E. Gilfarb**
**Mark Dispoto**
99 Northeast 4th Street
Miami, Florida 33132-2111
Facsimile: 305-536-4676
Email: michael.gilfarb@usdoj.gov
Email: mark.dispoto@usdoj.gov
(Via CM/ECF Electronic Notification)

*Attorneys for the United States of America*

**Gennaro Cariglio, Jr.**
10800 Biscayne Boulevard
Suite 900
Miami, FL 33161-7400
305-899-0438
Fax: 891-2297
Email: Sobeachlaw@aol.com
(Via CM/ECF Electronic Notification)

*Attorney for Toriano Johnson*

**Martin L. Roth**
101 N.E. Third Avenue
Suite 1430
Fort Lauderdale, FL 33301
954-745-7697
Fax: 745-7698
Email: MLRPA@msn.com
(Via CM/ECF Electronic Notification)

*Attorney for Daryl Davis*

**Marc David Seitles**
Courthouse Center
40 N.W. 3rd Street
Penthouse One
Miami, FL 33128
305-403-8070
Fax: 305-403-8210
Email: mseitles@seitleslaw.com
(Via CM/ECF Electronic Notification)

*Attorney for Hassam Williams*

**David Jonathon Joffe**
One East Broward Boulevard
Suite 700
Fort Lauderdale, FL 33301
954-723-0007
Fax: 723-0033
Email: DavidJJoffe@aol.com
(Via CM/ECF Electronic Notification)

*Attorney for Joseph K. Simmons*

SINCLAIR, LOUIS, HEATH, NUSSBAUM & ZAVERTNIK, P.A.