# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60285-CR-ROSENBAUM(s)(s)

UNITED STATES OF AMERICA,

       Plaintiff,

v.

HASAM WILLIAMS,

       Defendant.

_____/

## ORDER ON MOTION FOR NEW TRIAL

This matter is before the Court on Defendant Hasam Williams's Motion for New Trial [ECF No. 993]. The Court has carefully reviewed Defendant's Motion, all supporting and opposing filings, and the record. For the reasons that follow, the Court now denies Defendant's Motion.

### *I. Background*

Defendants Terrance Brown, Toriano Johnson, Daryl Davis, Hasam Williams, Joseph K. Simmons, and Bobby Ricky Madison, were indicted in a multiple-count Indictment. The Second Superseding Indictment charges all Defendants with conspiracy to commit Hobbs Act robbery between May 2010 and at least October 1, 2010 (Count 1). ECF No. 262. More specifically, the Second Superseding Indictment alleges that Defendants conspired "to take U.S. currency and property from the presence and custody of employees of Brink's Incorporated . . . against such persons' will, by means of actual and threatened force, violence, and fear of injury to such persons . . . ." *Id.* at 1-2.

As the Second Superseding Indictment relates to Williams, Count 2 charges a July 26, 2010,

attempted Hobbs Act robbery of Brink's security guards at a Bank of America in Lighthouse Point. Count 3, in turn, asserts that Williams used and carried a firearm during, in relation to, and in furtherance of the attempted Hobbs Act robberies charged in Counts 1 and 2. Count 9 alleges that Williams was a convicted felon in possession of a firearm on July 26, 2010. *Id*. at 6.

Counts 4 and 5 pertain to a September 17, 2010, attempted Hobbs Act robbery of Brink's security guards at a Bank of America branch in Miramar. *Id*. at 3-4. Count 4 charges the attempted robbery, while Count 5 alleges that Williams used and carried a firearm during, in relation to, and in furtherance of the attempted Hobbs Act robberies charged in Counts 1 and 4. *Id.* at 4.

Counts 6 through 8 all relate to an armored-car robbery that occurred on October 1, 2010, at a Bank of America branch in Miramar. Count 6 charges Hobbs Act robbery. *Id.* at 4-5. Relatedly, Count 7 alleges that Williams used and carried a firearm during, in relation to, and in furtherance of the Hobbs Act robberies charged in Counts 1 and 6. *Id.* at 5. Similarly, Count 8 asserts that Williams used and carried a firearm during, in relation to, and in furtherance of the Hobbs Act robberies charged in Counts 1 and 6 and in so doing "caused the death of a person, Alejandro Nodarse Arencibia, a Brink's security guard, through the use of a firearm, which killing was a murder . . . ." *Id.* at 5-6.

Defendant Williams elected to proceed to trial in this matter. Before trial, on April 26, 2013, the Court held a status conference at which the trial schedule was discussed. At that time, the Court noted that it appeared as though trial in the matter would likely begin during the second week of the trial period, the week of May 27, 2013. *See* ECF No. 710 at 128:5 - :10. The Government advised the Court that it anticipated that its case would require about two to three weeks to present. *Id.* at 128:11 - :20. Counsel for Co-defendant Johnson then requested that the Court please do "whatever

we can do to get the trial done by June 28th" because he was scheduled for a prepaid two-week family vacation out of the country starting after that time. *Id.* at 128:23 - 129:14. When the Court contemplated starting trial on May 23 to try to ensure completion before Johnson's attorney's vacation, counsel for Williams asked that the Court wait to start until May 28 (May 27 was Memorial Day) to avoid splitting the opening statements before and after the weekend. *Id.* at 129:23 - 130:5.

On May 16, 2013, the Court held a calendar call in this case. *See* ECF No. 958. Once again, the issue of Johnson's counsel's two-week vacation starting June 29 arose. *See id.* at 24:22 - 34:4. The Court then set forth a likely trial schedule, and counsel for some of the parties advised the Court that they had conflicts on particular days that were intended for trial. *See id.* No parties — including Williams — objected to working around any attorney's conflict, even knowing what the resulting trial schedule would be, so the Court agreed to accommodate all conflicts raised by determining that the trial would be in recess on the dates of the attorneys' conflicts. *See, generally,* ECF No. 958. The Court further explained,

> I'm going to tell [the jury] that I expect [that the trial] will take about five weeks. That if we're not done by June 28th, we're going to have a two-week recess, if you will, and then we will need them to return on July 15th to continue. It's not an exact science, but that's what our best estimate is, and if they're going to have any kind of problems during that time, they need to let me know up front. . . .

*Id.* at 37:10 - :16. Still, no party objected to the trial schedule — including the two-week recess, if necessary — or to the Court's stated intention to advise the venire panel members that a two-week recess might be necessary. *See, generally*, ECF No. 958.

To accommodate the parties' concerns, the Court began jury selection on May 24, 2013. *See* ECF No. 742. During jury selection, the Court specifically advised the *voir dire* panel that it

hoped that trial would conclude by June 28, 2013, but if it did not, the Court would need to take a two-week recess, and the trial would continue during the week of July 15, 2013. Indeed, jurors who were unavailable the week of July 15, 2013, were stricken because of that fact.[1] At the end of the two-day jury-selection process, Williams objected for the first time to the possible two-week recess in July. *See* ECF No. 1007 at 70:25-74:1. The Court overruled the objection for a number of reasons. Specifically, the Court explained that it viewed the objection as untimely; that if the parties' trial estimates were accurate, a "three-day oops factor" was already built into the schedule to allow the trial to finish before Johnson's counsel's two-week vacation; and that it did not appear that the trial could be held uninterrupted for a substantial period at another foreseeable time. *See id.*

After jury selection, the trial began. The parties completed their closing arguments on June 27, 2013, and jury deliberations began late that same day. *See* ECF No. 858. On June 28, 2013, the jury sent the Court a note stating, "We can only come to a unanimous [sic] on all defendants [sic]. We only came to a unanimous decision regarding one defend[a]nt." ECF No. 859 at 1. After a hearing with the parties, the Court sent back the following written response:

> We have received your note. Please continue your deliberations today. We know that we have previously advised you that if we did not finish by today, we would take off the next two weeks. However, please be aware that you may continue your deliberations after today, if necessary, next week beginning on Monday or whenever the entire jury is next available. Thank you.

*Id.* at 2.

Immediately after the Court conveyed this note to the jury, the jury sent out another note

[1] This statement is based on the Court's best recollection. As of the preparation of this Order, the transcript of the voir dire proceedings that occurred on May 24, 2013, were not transcribed (only the pre-voir dire proceedings were transcribed).

stating, "It is not a question of finishing today. It is that we are a hung jury for 4 of the 5 defend[a]nts." ECF No. 860. The Court again held a hearing and decided to give the jury the Eleventh Circuit Pattern Instruction modified *Allen* charge. The jury then retired to deliberate a short while longer and then advised the Court that it wished to continue its deliberations Monday, July 15, 2013.

On Monday, July 15, 2013, the jury sent the Court another note. This one stated, "After reviewing <u>all</u> the evidence presented we are unable to come to a unanimous decision of not guilty or guilty of [sic] 4 of the defendants. We have exhausted all avenues (evidence). Thank you." ECF No. 882 at 1 (emphasis in original). Once again, the Court discussed the jury's note with the parties. The Court advised the parties that it intended to send the jury the following note:

> I have received your note. I wish to advise you that you do not have to reach unanimous agreement on ***all*** of the charges before returning a verdict on ***some*** of them. Therefore, if you have reached unanimous agreement on any of the charges against any of the Defendants, we ask that you return your unanimous verdict with respect to each of those charges on which you have reached unanimous agreement. Thank you.

*Id.* at 2 (emphasis in original). Although some Defendants objected, Defendant Davis did not. During the hearing, the Court explained its intention that the note alert the jury that partial verdicts were an option. The Court further remarked that the instruction was specifically phrased to inform the jury that it should notify the Court if it had already reached partial verdicts and to avoid directing the jury to deliberate more. After hearing the parties' positions, the Court sent the note in its original form to the jury.

Shortly thereafter, the jury requested a clean verdict form for Defendant Williams. ECF No. 954 at 9:17-10:9. At 3:06 p.m., without seeking Williams's input, the Court provided the requested

new verdict form for Williams. *Id.* at 10:6-:13. The Court assembled counsel and advised the parties that it had provided the clean verdict form for Williams. *Id.* No parties asked to be heard regarding the Court's announcement. *See id.*

Very soon after that, the jury sent the Court a note indicating that it had reached a verdict. *Id.* at 10:17-:21. By the time that the Court reassembled counsel and Defendants, the time was 3:17 p.m. *Id.* At that time, Williams objected to the Court's provision of a new verdict form to the jury. *See id.* at 10:22-12:23. The Court overruled the objection but immediately obtained from the jury the original version of the Williams verdict form. *Id.*; *see also* ECF No. 963.[2]

The jury returned its partial verdicts for each Defendant, except for Simmons, for whom the jury returned a complete verdict. *See* ECF No. 885, ECF No. 886, ECF No. 887, ECF No. 888, ECF No. 890. In particular, the jury acquitted Simmons of all charges, ECF No. 885; convicted Williams of Counts 1, 2, and 9 (felon-in-possession charge), and acquitted him of Counts 4 and 5, ECF No. 890; and convicted Davis, Johnson, and Brown of Count 1. With regard to all other charges against Davis, Johnson, Brown, and Williams, the jury reported that it was hung. *See* ECF No. 886, ECF No. 887, ECF No. 888, ECF No. 890.

Based on these events, Defendant Williams seeks a new trial. In support of his Motion, Williams adopts Defendant Davis's arguments set forth in Davis's Motion for New Trial [ECF No. 902]. In addition, Williams argues that he is entitled to a new trial "based on (I) the jury's request

---

[2]ECF No. 963, docketed *nunc pro tunc* as of the date June 28, 2013, is the jury's discarded original verdict form for Defendant Williams. The docket entry is sealed and currently is not accessible to anyone other than the Court, so the Eleventh Circuit will have the discarded verdict form available, should it wish to consider it, on appeal. This Court has reviewed the sealed verdict form and does not believe it to support a new trial. For that reason, and further, to avoid unjustifiably intruding into the jury's deliberations, this Order does not reveal the contents of the discarded verdict form.

for a new verdict form after it received the Court's unduly coercive instruction; (II) the jury's change in its findings after the two-week break in deliberations; and (III) the prejudice suffered by Mr. Williams due to the Court's decision not to sever him from the other defendants . . . ." ECF No. 993 at 2. The Government opposes Williams's Motion, contending that no error occurred. *See* ECF No. 999.

## *II. Discussion*

Previously, the Court considered Defendant Davis's Motion for New Trial [ECF No. 902]. For the same reasons that the Court denied Davis's Motion for New Trial, *see* ECF No. 964, the Court likewise denies Williams's Motion for New Trial to the extent that it adopts Davis's arguments. For purposes of putting into context the Court's discussion on the issues raised separately by Williams in his Motion for New Trial, however, the Court repeats some of its analysis of Davis's Motion below.

*A. The Verdict Form*

In his first basis for seeking a new trial, Davis argued that, "[i]n the context of the previous notes, the instructions, the *Allen* charge, the two (2) week recess, and the jury notes on July 15, 2013 that 'we are unable to come to a unanimous decision,' the Court's last instruction was unduly coercive in encouraging a partial verdict."³ ECF No. 902 at 9. Davis further objected to the use of the word "we" in the final instruction, asserting that it "placed pressure on the jury and gave the

---

³Defendant Davis did not object to the final instruction before the Court provided the jury with it. *See, generally*, ECF No. 954. Arguably, therefore, his objection to the instruction in his Motion for New Trial was subject to plain-error review. *Cf. United States v. Moore*, 253 F.3d 607, 609 (11th Cir. 2001) ("Where . . . [an] appellant challenges a jury instruction for the first time on appeal, the instruction is reviewed for plain error") (citation omitted). Because the Court found no error, however, the Court did not determine the appropriate standard of review for this issue raised for the first time in Davis's Motion for New Trial.

impression that the Court, and the government and the Defendants ('we ask you') required of them at least a partial verdict." *Id.* In addition, Davis suggested that the Court's final instruction "was the equivalent of communicating to the jurors that they 'have got to reach a decision' . . . . in the case,'" (citing *Jenkins v. United States*, 380 U.S. 445, 446 (1965)) and that it "implicitly suggested to the jury that a partial or compromise verdict was encouraged and would allow them to complete their deliberations and go home." *Id*.

This Court previously concluded that the final instruction embodied a correct statement of the law, and it was not unduly coercive. "Generally, district courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts . . . ." *United States v. Williams*, 526 F.3d 1312, 1320 (11th Cir. 2008) (quoting *United States v. Prather*, 205 F.3d 1265, 170 (11th Cir. 2000)). Here, the instruction satisfies this standard.

Rule 31(b), Fed. R. Crim. P., explicitly authorizes the return of a partial verdict in single and multiple-defendant cases:

> **(b)** **Partial Verdicts** . . .
>
> **(1)** **Multiple Defendants.** If there are multiple defendants, the jury may return a verdict at any time during its deliberations as to any defendant about whom it has agreed.
>
> **(2)** **Multiple Counts.** If the jury cannot agree on all counts as to any defendant, the jury may return a verdict on those counts on which it has agreed.
>
> \* \* \*

*See also* 18 U.S.C.A. § 3531 (directing reader to Fed. R. Crim. P. 31 regarding "[r]eturn; several defendants; conviction of less offense; poll of jury"). Consistent with Rule 31(b), the final

instruction simply advised the jury that the return of a partial verdict was an option and emphasized that any partial verdict must be unanimous. That instruction accurately states the applicable law.

Nor was the instruction unduly coercive. In the Eleventh Circuit, a court must evaluate whether, under the totality of the circumstances, a given jury instruction was inherently coercive. *See United States v. Chigbo*, 38 F.3d 543, 545 (11th Cir. 1994) (applying this standard to review of the district court's *Allen* charge, its polling of the jurors, and a combination of the two). Davis cited three cases in support of his contention that the final instruction in this case was unduly coercive. Two of them are materially distinguishable, and the third actually militates in favor of a finding that the instruction was not unduly coercive.

First, in *Jenkins v. United States*, 380 U.S. 445 (1965), about two hours after the jury retired to deliberate, it sent a note advising that it had been unable to agree upon a verdict on both counts. In response, among other statements, the judge instructed the jury, "I am not going to accept this. You have got to reach a decision in this case," and "We have cases that are much harder than this one that juries decide." *Jenkins v. United States*, 330 F.2d 220, 221 & 221 n.1 (D.C. Cir. 1964), *rev'd*, 380 U.S. 445 (1965). Not surprisingly, the Court concluded that this instruction was coercive.

Unlike in *Jenkins*, the Court's final instruction in this case did not advise the jury that it had to reach a decision in the case or intimate in any way that the jury would not be released unless and until it came to a verdict. Nor did anything in the language of the instruction indicate that the Court required the jury to come to at least a partial verdict or that the Court would allow the jury to leave if it did. In fact, the instruction in this case employed the word "if," explaining, "***[I]f*** you ***have reached*** unanimous agreement on any of the charges against any of the Defendants, we ask that you return your unanimous verdict with respect to each of those charges on which you ***have reached***

-9-

unanimous agreement (emphasis added). "If" means "[i]n the event that," or "[o]n the condition that." *The American Heritage Dictionary of the English Language* 872 (4th ed. 2000). Thus, use of the word "if" suggested that the jury had more than one option: returning partial verdicts or not returning partial verdicts.

Moreover, the instruction employed the present-perfect tense ("have reached"), which, when used in the sense set forth in the instruction, conveys that an occurrence already happened at an indefinite time in the past. Indeed, during the conference immediately preceding the Court's final instruction, the Court explained that the instruction had purposely been drafted to refer to any partial verdicts upon which the jury had already agreed in the past, so as to avoid asking the jury to deliberate further. *See* ECF No. 954 at 5:3-:20. Had the Court desired to ask the jury to continue its deliberations, the instruction would have been asked in the present tense and would have directed, "***If you reach***," not "[i]f you have reached." Thus, the instruction did not advise the jury to continue its deliberations; rather, it asked the jury to report decisions that it had previously made.

The law assumes that jurors follow instructions. *United States v. Butler*, 102 F.3d 1191, 1196 (11th Cir. 1997) (citations omitted). And, given the brief amount of time that it took for the jury to return its partial verdicts after the Court sent the final note to the jury, it is apparent that the jury, in fact, complied with the instruction as written and simply reported back verdicts that it had previously reached with regard to the multiple counts pending against each of the five Defendants. As for the word "we" in the instruction, it neither bears on the conditional nature of the instruction nor somehow converts the instruction into a present-tense request. Consequently, the instruction's use of the word "we" is irrelevant to the analysis of whether the instruction is coercive.

Turning to the second case on which Davis relied in arguing that the instruction was unduly

coercive — *United States v. Fossler*, 597 F.2d 478 (5th Cir. 1979), the Court notes that the *Fossler* jury reported itself deadlocked, and the judge responded with an *Allen* charge. *Id.* at 483. When the jury again indicated that it was deadlocked, the court sent the jury home for the weekend. *Id*. The jurors reconvened on Monday, and the court sent the jury the original instructions again. *Id.* When the jury again advised the court that it was deadlocked, the court sent back the written *Allen* instruction that it had previously read to the jury. *Id.* An hour later, the jury returned a guilty verdict. *Id.*

The instant case is distinguishable from *Fossler* because the Court here gave the *Allen* charge only once — not twice, as the court had in *Fossler*. Moreover, the final instruction in this case, unlike the second *Allen* charge in *Fossler,* did not ask the jury to conduct any further deliberations at all. Instead, it requested that the jury merely report any partial verdicts that it had previously reached.

Finally, Davis cited *United States v. Rey*, 811 F.2d 1453 (11th Cir. 1987). In *Rey*, a panel of the Eleventh Circuit expressed its discontent with the *Allen* charge. *See id.* at 1458-60. Nevertheless, the panel recognized that it was "bound by precedent" to uphold the trial court's *Allen* charge instruction. *See id.* at 1460. Since *Rey*, the Eleventh Circuit has upheld the giving of the *Allen* charge many times. *United States v. Bush*, 727 F.3d 1308, 1320 (11th Cir. 2013) ("The *Allen* charge in this case was derived from the Eleventh Circuit pattern *Allen* instructions, which we have approved 'on numerous occasions'") (citation omitted). Indeed, the Eleventh Circuit has adopted a modified *Allen* charge as part of the Eleventh Circuit's Pattern Jury Instructions. And it is precisely that Eleventh Circuit-sanctioned instruction that the Court gave here.

As for the final instruction, nothing about that, which did no more than request that the jury

advise the Court of any partial verdicts it had already reached and did not in any way even refer to the *Allen* charge previously administered, somehow rendered unduly coercive the modified *Allen* charge that the Eleventh Circuit has long approved. For all of these reasons, the Court denied Davis's Motion for New Trial, as based on the Court's final instruction.

Nor does the fact that the jury asked for a clean verdict form for Williams alter the analysis with regard to him. A jury's mere request for a new verdict form, in and of itself, does not indicate jury misconduct or otherwise suggest error in any way. A jury may request a new verdict form for any number of legitimate reasons. Among others, for example, a jury may seek a new verdict form because a scrivener's error occurred in preparing the original one. Or a jury may ask for a new verdict form because the verdict form was filled out before all deliberations were complete, and further deliberations resulted in a different verdict. Neither of these sequences of events constitutes error.

While Williams argues that the jury "change[d]" its findings after the two-week recess, that contention, too, fails to support a finding of error. First, it is not entirely clear whether the jury changed its filings after the two-week recess because it is not obvious whether the original verdict form contained a scrivener's error, was prepared prematurely, or was, in fact, the jury's original verdict that was subsequently amended. Second, even if the jury changed its verdict following the two-week recess, that does not necessarily mean that the jury modified its verdict to Williams's disadvantage. Presumably, Williams would not want the pre-recess verdict reinstated were it less favorable to Williams. In the absence of any indication of improper jury conduct, the Court should not be in the business of injecting itself into jury deliberations and trying to divine how the jury reached its verdict, and this Court will not do so here.

At bottom, Williams's objections regarding the two versions of the verdict form are complaints about the two-week recess during the jury deliberations. For the reasons previously discussed, however, the two-week recess did not constitute error. Accordingly, Williams's Motion for New Trial, as based on the verdict forms, must be denied.

B. *No Error Resulted from Trying Williams with His Codefendants*

Williams also complains about the admission of evidence under Rule 404(b), Fed. R. Evid., against Williams's Codefendants, contending that it resulted in "unfair spillover prejudice" against Williams. *See* ECF No. 993 at 5. This Court previously issued an Order denying Williams's Motion to Sever [ECF No. 526] in which the Court explained why admission of the Rule 404(b) evidence against Williams's Codefendants did not unfairly prejudice Williams. *See* ECF No. 593. The reasoning set forth in that Order continues to apply with equal force here.

Moreover, since that time, the trial has occurred, and the record reflects that the jury was repeatedly instructed about what evidence it could and could not consider, against whom the jury could consider the evidence, and any limitations on the ways in which the jury could consider the evidence. For example, while Williams complains that Moss testified that he was in jail with Johnson, the record reflects that immediately following that testimony, the Court instructed the jury as follows:

> Let me first say that a moment ago, Mr. Moss indicated that he was in jail with Mr. Johnson. There is no evidence that Mr. Moss was in jail with Mr. Johnson, and that is stricken from this record. You are to disregard that and you may not consider that for any purpose whatsoever in your deliberations.

ECF No. 862 at 81:14-:19. Then the Court asked any juror who was confused by the Court's instruction or did not understand it to please raise his or her hand. *Id.* at 81:20-:23. No one did. *Id.*

at 81:24. So the Court asked the jurors to raise their hands if any of them would not be able to follow the instruction. *Id.* at 81:25-82:1. Again, none did. *Id.* at 82:2.

Similarly, with respect to the 2001, 2003, and 2005 armed robberies, the Court read the jury the Eleventh Circuit's Pattern Jury Instruction regarding Rule 404(b) evidence. *See* ECF No. 864 at 19:15-20:18, 106:21-107:13; 230:17-231:11. Once again, the Court asked the jurors to confirm that they understood the instruction and could follow it. *Id.* at 20:9-:11; 231:15-:21. In addition, the Court specifically instructed the jury that the evidence regarding the 2001 and 2003 armed robberies was to be considered against only Brown, "and not against any of the other [D]efendants." *Id.* at 110:16-:21; 231:12. And once again, the jurors confirmed that they understood the instruction and could follow it. *Id.* at 110:22-111:2; 231:15-:21. The Court also invited the parties to submit proposed limiting instructions at various junctures in the trial. *See, e.g.,* ECF No. 862 at 309:20-310-:12; ECF No. 864 at 197:23-:24. Because Williams has not demonstrated unfair prejudice resulting from his trial with his Codefendants, Williams's Motion for New Trial on that basis must be denied.

### *III. Conclusion*

For the foregoing reasons, Defendant Hasam Williams's Motion for New Trial [ECF No. 993] is **DENIED**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 5th day of December 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies: Counsel of Record